**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZION M. VELASQUEZ and RISHMA ANOOP, *on behalf of themselves, FLSA Collective Plaintiffs*, *and the Class,*<br><br>                    Plaintiffs,<br><br>        v.<br><br>UNIVERSAL PROTECTION SERVICE, LLC, d/b/a ALLIED UNIVERSAL,<br><br>                    Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

       Plaintiffs ZION M. VELASQUEZ and RISHMA ANOOP ("Plaintiffs"), on behalf of

themselves and others similarly situated, by and through their undersigned attorneys, hereby file

this Class and Collective Action Complaint against Defendant UNIVERSAL PROTECTION

SERVICE, LLC, d/b/a ALLIED UNIVERSAL ("Defendant"), and state as follows:

<u>**INTRODUCTION**</u>

       1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

§§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from

Defendant: (1) unpaid wages, including overtime, due to time-shaving, (2) unpaid overtime wages

due to a failure to compensate at a blended overtime rate, (3) liquidated damages, and (4) attorneys'

fees and costs.

       2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they

and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including

unpaid overtime, due to time-shaving, (2) unpaid overtime wages due to a failure to compensate at a blended overtime rate, (3) statutory penalties, (4) liquidated damages; and (5) attorneys' fees and costs.

3.      Plaintiff ANOOP further alleges that, pursuant to New York's prevailing wage laws, Article 9 of NYLL §230 *et seq.*, she and others similarly situated are entitled to recover from Defendant (1) unpaid wages, including unpaid overtime, due to time shaving, (2) unpaid overtime benefits for work days lasting longer than eight (8) hours pursuant to NYLL § 232, (3) unpaid supplemental benefits, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

4.      Defendant operates a security and private investigation company under the name "Allied Universal," which provides services to both commercial and residential sites.  Such sites include construction sites, schools and higher education, retail stores, grocers, and hospitality security, throughout New York.

5.      Plaintiffs, potential collective members, and putative class members are current and former security guard employees of Defendant, who were victims of Defendant's schemes to underpay employees.  Specifically, despite requiring employees to work hours beyond their shift each day, Defendant would only compensate employees based on their schedules. Defendant's system resulted in both pre-and-post shift timeshaving.  Further, because Defendant only paid employees based on their schedules, Defendant failed to pay Plaintiffs and putative class members for work occurring before and after their scheduled shifts.  Finally, Plaintiffs potential collective members, and putative class members were all automatically deducted 30 minutes a day for meal breaks despite the requirement that they work through lunch.

6.    For Plaintiff ANOOP and other putative class members working as building service employees (as defined by NYLL §230) pursuant to Defendant's contract with a public agency, Defendant also failed to pay employees supplemental benefits as required by NYLL §230 *et seq.* and failed to pay these employees overtime for hours worked over eight (8) in a single day, per NYLL §232.

7.    Defendant also underpaid Plaintiffs, potential collective members, and putative class members due to Defendant's failure to compensate employees at a blended overtime rate. As an example for the week ending on February 23, 2023, Plaintiff VELASQUEZ worked 60 hours at two different pay rates.  For 45 hours, Plaintiff VELASQUEZ worked at a pay rate of $16.36 per hour.  For the remaining 15 hours, Plaintiff VELASQUEZ worked at a pay rate of $19.75 per hour.  Plaintiff VELASQUEZ's overtime rate was improperly calculated solely from the lower of the two payrates ($16.36).

8.    Plaintiffs bring this wage and hour class action on behalf of themselves and all similarly situated employees, who during the applicable state and federal limitations periods up to and including the present (the "Class Period"), were similarly underpaid by Defendant in violation of protections afforded under the FLSA and the laws and regulations of the state of New York and the following States.

1) Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;

2) Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

3) Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

4) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

5) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

6) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

7) Delaware: Delaware Minim Wage Law, Delaware Code Title 19-90 *et seq.*;

8) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

9) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

10) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

11) Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 § *388-1 et seq.;*

12) Idaho: Idaho the Minimum Wage Law 44-1501 *et seq.*, Hours Worked Act §44-1201 *et seq.*, and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;

13) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

14) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

15) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

16) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

17) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

18) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

19) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

20) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

21) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

22) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

23) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

24) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

25) Montana: Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

26) Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq*., and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

27) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60,

28) New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

29) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

30) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

31) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

32) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

33) North Dakota: North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

34) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

35) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

36) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

37) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

38) Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

39) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

40) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

41) South Dakota: South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

42) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

43) Vermont: Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

44) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

45) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

46) West Virginia: West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

47) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*; and

48) Wyoming: Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

## **JURISDICTION AND VENUE**

9.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b),

28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law

claims pursuant to 28 U.S.C. § 1367.

10.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Defendant maintains its New York office in Manhattan.

**PARTIES**

11.    Plaintiff RISHMA ANOOP is a resident of Bronx County, New York.

12.    Plaintiff ZION M. VELASQUEZ is a resident of Bronx County, New York.

13.    Defendant UNIVERSAL PROTECTION SERVICE, LLC, d/b/a ALLIED UNIVERSAL is a foreign business corporation organized under the laws of the State of Delaware with an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

14.    Defendant operates all the sites for which it provides security services through the same executive management team, from the same headquarters with the same policies and procedures.  Each site is engaged in related activities, share common ownership, and have a common business purpose:

15.    At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Defendant.

16.    At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

17.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendant.

18.    Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## MULTISTATE FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to security guards, security officers, fire guards, and patrol guards, among others, employed by Defendant in any State where they do business on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.     At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to time shaving and a failure to compensate employees at a proper blended overtime rate. The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

21.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

22.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including, but not limited to security guards, security officers, fire guards, and patrol guards, among others, employed by Defendant in

any State where they do business on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

23.     To the extent necessary, Plaintiffs will designate subclasses for each of the States where Defendant has employees, including potential designation of Plaintiffs as representative for New York Class members.

24.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

25.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant, there is no doubt that there are more than forty members of the Class. The members of potential subclass employees total over forty (40) in each of the states where Defendant has employees, including the State of New York.  Additionally, there exists a subclass of employees who work as building service employees (as defined by NYLL § 230) pursuant to Defendant's contract with New York State public agencies ("Prevailing Wage Subclass").  The members of the Prevailing Wage Subclass include Plaintiff ANOOP and total over forty (40) as well.

26.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each

member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of: (i) failing to pay wages, including overtime, due to time shaving; (ii) failing to pay all overtime compensation due to a failure to compensate employees using a blended overtime rate; (iii) failing to provide wage and hour notices, at date of hiring and annually; and (iv) failing to provide proper wage statements.

27.    Plaintiff ANOOP is also a member of the Prevailing Wage Subclass and Plaintiff ANOOP's claims are typical of those claims, which could be alleged by any member of the Prevailing Wage Subclass, and the relief sought is typical of the relief which would be sought by each subclass member in separate actions.  All Prevailing Wage Subclass members were subject to the same corporate practices of (i) failing to pay Prevailing Wage Subclass members' wages, including benefits, pursuant to the prevailing wage as required by NYLL § 231, and (ii) failing to pay overtime for Prevailing Wage Subclass members who worked more than eight (8) hours in any one day.

28.    Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where

9

individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.    Defendant and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendant employed Plaintiffs and Class Members within the meaning of the NYLL and State wage laws;

b) What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiffs and the Class Members;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiffs and Class Members for their work;

d) Whether Defendant properly notified Plaintiffs and Class Members of their hourly rate and overtime rate;

e) Whether Defendant paid Plaintiffs and Class Members for the actual hours that they worked;

f) Whether Defendant provided wage and hour notices to Plaintiffs and Class Members, at date of hiring and annually, per requirements of the NYLL and State wage laws;

g) Whether Defendant provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL and State wage laws;

h) Whether Defendant paid Plaintiff ANOOP and Prevailing Wage Subclass members at an overtime rate for all hours worked over eight (8) in a day; and

i) Whether Defendant paid Plaintiff ANOOP and Prevailing Wage Subclass members all Supplemental benefits required by NYLL § 230 *et seq.*

## STATEMENT OF FACTS

*Plaintiff RISHMA ANOOP Claims:*

33.    In or around November 2023, Plaintiff ANOOP was hired by Defendant to work as a security guard. During her employment, she was stationed at the government run Brooklyn Food Stamp Center located at 404 Pine St, Brooklyn, NY 11208. Plaintiff ANOOP's employment with Defendant terminated on or around January 2024.

34.    Throughout Plaintiff ANOOP's employment, Plaintiff ANOOP was employed as a building service employee pursuant to § 230 of the NYLL.  Plaintiff ANOOP performed work "in connection with the care or maintenance of an existing building… for a contractor under a contract with a public agency which is in excess of one thousand five hundred dollars and the principal purpose of which is to furnish services through the use of building service employees."  Plaintiff ANOOP worked for Defendant at the Brooklyn Food Stamp center pursuant to a contract with the city, which was in excess of $1,500.  At all times, Plaintiff ANOOP and Prevailing Wage Subclass members worked as building service employees pursuant to § 230 of the NYLL.

35.    Throughout Plaintiff ANOOP's employment, Plaintiff ANOOP was scheduled to work five (5) days from 1:00 p.m. to 9:30 p.m, for a total of eight-and-a-half (8.5) hours per shift, with an automatic thirty (30) minute break deduction.  Once per week, Plaintiff ANOOP was asked to come in to work an additional half-shift of four (4) hours. FLSA Collective Plaintiffs and Class Members had similar work schedules each week.  Plaintiff ANOOP would work her scheduled shift and additional hours which went uncompensated. At all times, Plaintiff ANOOP, FLSA Collective Plaintiffs and Class Members worked hours in excess of their scheduled hours for which they were not compensated.

12

36.     From the start of her employment to its end, Plaintiff ANOOP was paid at the prevailing minimum wage rate. FLSA Collective Plaintiffs, Class Members  and Prevailing Wage Subclass members were all compensated at similar rates throughout their employment.

*Plaintiff ZION M. VELASQUEZ Claims:*

37.     In or around August 2022, Plaintiff VELASQUEZ was hired by Defendant to work as a security guard. During his employment, he was assigned to security duties in multiples hotels in Manhattan, at least one hotel in the Bronx, and at least one hotel in Queens.  Among the hotels he was assigned to work were the following: a Days-In located in the Bronx, the Artel Hotel in Manhattan, and a hotel on 51st Street.  Plaintiff VELASQUEZ's employment with Defendant terminated on or around April 30, 2023.

38.     Throughout Plaintiff VELASQUEZ's employment, Plaintiff VELASQUEZ was scheduled to work a 60-hour schedule once every other week.  Examples of weeks where Plaintiff VELASQUEZ was scheduled to work, and did in fact work, over 40-hours may be seen for the weeks ending on February 2, 2023, February 9, 2023, and February 20, 2023.  Plaintiff VELASQUEZ would work his scheduled shifts and additional hours which went uncompensated. At all times, Plaintiff VELASQUEZ, FLSA Collective Plaintiffs and Class Members worked hours in excess of their scheduled hours for which they were not compensated.

*Plaintiffs', FLSA Collective Plaintiffs', Class Members', Prevailing Wage Members' Wage Claims:*

39.     Defendant only pays its employees for their scheduled time.  Because Defendant only pays its employees for their scheduled time, all work conducted outside of Plaintiffs', FLSA Collective Plaintiffs', and Class Members' schedules goes uncompensated.

40.     Defendant requests that employees appear fifteen (15) minutes early for their scheduled shifts but fail to compensate employees for this time.   Plaintiffs, FLSA Collective

13

Plaintiffs, and Class members followed Defendant's direction and would appear early for shifts and immediately commence work but would not be compensated for this pre-shift work.

41.     As Plaintiff ANOOP worked five (5) shifts a week, Defendant's failure to compensate pre-shift work resulted in Plaintiff ANOOSH being underpaid for one (1) hour and fifteen (15) minutes of work each week.  As Plaintiff VELASQUEZ worked between five (5) and eight (8) shifts in a week, Defendant's failure to compensate pre-shift work resulted in Plaintiff VELASQUEZ being underpaid between one (1) hour and fifteen (15) minutes of work and two (2) hours of work each week. Similarly, FLSA Collective Plaintiffs, and Class members were undercompensated by fifteen (15) minutes for each shift worked.

42.     Approximately once every other week, Plaintiff ANOOP, FLSA Collective Plaintiffs, and Class members are asked to work an additional half shift of four (4) hours.  Because this half shift of four (4) hours is not part of employees' schedules, Defendant fails to compensate employees for these additional hours.  Plaintiff ANOOP complained to her supervisors, Ms. Martinez and Mr. Johnson, regarding the lack of payment, but Defendant refused to resolve these payments.

43.     Due to the failure to compensate additional shifts beyond employees' schedules, Defendant failed to compensate Plaintiff ANOOP for approximately (2) hours per week. Similarly, FLSA Collective Plaintiffs, and Class Members were undercompensated by approximately (2) hours for each week worked.

44.     Defendant requires that Plaintiffs, FLSA Collective Plaintiffs, and Class members remain tethered to their assigned site during their lunch break for the purpose of continuing to perform security service for the company. These workers stay on – or near – their assigned site and must stay in uniform, and maintain a communication device (e.g., radio or cell phone) in the

14

event of an emergency. The restrictions placed on employees' break is designed solely for the benefit of the employer and, in their absence, the company would have to hire other employees to cover for the same services. By not compensating these workers, Defendant receives free labor from Plaintiffs, FLSA Collective Plaintiffs, and Class members. Moreover, these meal breaks are frequently interrupted by management checking in and requesting updates.

45.    That the meal periods inure to the benefit of the employer is particularly evident, as many of Defendant's contracts mandate continuous security, but Defendant only maintains one guard on the premises.

46.    Due to the Defendant's automatic deduction of meal breaks, Plaintiffs, FLSA Collective Plaintiffs, and Class members provide thirty (30) minutes of work per shift, which goes uncompensated.  As Plaintiff ANOOP worked five (5) shifts a week, Plaintiff ANOOP was undercompensated by two-and-a-half (2.5) hours for each week worked.    As Plaintiff VELASQUEZ worked five (5) to eight (8) shifts a week, Plaintiff VELASQUEZ was undercompensated by two-and-a-half (2.5) to four (4) hours for each week worked.    Similarly, FLSA Collective Plaintiffs and Class Members were similarly undercompensated by thirty (30) minutes per shift worked.

47.    Prior to Plaintiffs, FLSA Collective Plaintiffs, and Class members being placed on Defendant's work schedules, Plaintiffs, FLSA Collective Plaintiffs, and Class members are required to undergo a one (1) week training period.  As this work occurs prior to Plaintiffs, FLSA Collective Plaintiffs, and Class Members being placed on Defendant's official work schedules for their sites of work, Plaintiffs, FLSA Collective Plaintiffs, and Class Members are not compensated for this time.  All Plaintiffs, FLSA Collective Plaintiffs, and Class Members are not compensated for a forty (40) hour workweek.

48.     Defendant also underpaid Plaintiffs, potential collective members, and putative class members due to Defendant's failure to compensate employees at a blended overtime rate pursuant to 29 C.F.R. § 778.115 and NYLL.  As an example for the week ending on February 23, 2023, Plaintiff VELASQUEZ worked 60 hours at two different pay rates.  For 45 hours, Plaintiff VELASQUEZ worked at a pay rate of $16.36 per hour.  For the remaining 15 hours, Plaintiff VELASQUEZ worked at a pay rate of $19.75 per hour.  Plaintiff VELASQUEZ's overtime rate was improperly calculated solely from the lower of the two payrates ($16.36).

49.     Defendant underpaid Plaintiff ANOOP and Prevailing Wage Subclass members as they failed to provide minimum required supplemental benefits to workers subject to NYLL §230. After July 1, 2023, such benefits were required to amount to at least an additional $7.03 an hour over New York State and Federal pay requirements.

50.     Further, due to the violations listed above, Defendant underpaid Plaintiff ANOOP and Prevailing Wage Subclass members as Defendant failed to provide overtime payments for all hours worked over 8-hours in a day in violation of NYLL §232.

*Plaintiffs', FLSA Collective Plaintiffs', and Class Members' Wage Theft Prevention Act Claims:*

51.     Plaintiffs and Class Members never received proper wage notices from Defendant. They also did not receive accurate wage statements from Defendant.  41 of 50 States require employees to receive at each pay period paystubs with accurate information as to employees work hours and rates of pay.

52.     The States of New York, Minnesota, and California have wage laws providing damages for the failure to provide accurate pay documents.  In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL— and California Labor Code 226 LC,

Defendant knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiffs and Class Members at the beginning of their employment with Defendant.

53.    Defendant further violated the WTPA and California Labor Code 226 LC by failing to provide Plaintiffs and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA and California Labor Code 226 LC. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

54.    In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that entails a concrete harm to an interest identified by the legislatures of New York, California, and Minnesota, As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed,

and stated that the WTPA would dramatically change this by increasing penalties
for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20,
2020)

55.    Defendant knowingly and willfully operated their business with a policy of not
providing proper wage notices and statements as required by NYLL and other state wage laws.

56.    In failing to provide proper wage statements and notices, Defendant has failed to
comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified
by the State legislature of New York, Minnesota, and California. Defendant's failure to provide
such notices trivializes the importance of these notices in protecting Plaintiffs and Class Members
interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the State
legislature concluded that enacting wage notice provisions would "far better protect workers' rights
and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices
function as a means of apprising employees of their rights and of their employer's obligations
towards them, empowering employees to advocate for themselves. Deprivation of such notices
necessarily entails a significant risk of harm to the employees' concrete interest in being paid
properly and timely.

57.    Here, Defendant's failure goes beyond generating a risk of harm to Plaintiffs and
Class Members.  Defendant's conduct actually harmed Plaintiffs and Class Members.  Defendant's
failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime
rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiffs and
Class Members were entitled to get paid, deprived employees of the ability to contest Defendant's
calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation
to vindicate Plaintiffs' and Class Members' rights.  This conduct ensured Defendant's ability to

further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendant's failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees.  Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

58.    Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiffs and Class Members.  This delayed payment caused Plaintiffs and Class Members to struggle to timely pay bills and delay or forgo purchases.

59.    Further, the direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2

60.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

61.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

---

might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

62.     Here, it is clear that Defendant's failure to provide Plaintiffs and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendant submitted to the IRS on behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

63.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

64.     The case at bar is somewhat different from *Coward* inasmuch as Defendant actually underpaid Plaintiffs and Class Members rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class Members lost benefits by virtue of how Defendant reported their income, and how Defendant reported employees' income was the direct outcome of the inaccuracies in employees' wage

statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

65.    Whether or not any Plaintiffs and Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

66.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

67.    Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class Members cannot even attempt to have their earnings report corrected because Defendant *did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs and Class Members were irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2s to the

IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

68.    Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL and other state wage laws.

69.    Defendant knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiffs, FLSA Collective Plaintiffs, and Class Members, including due Defendant's policy of time shaving.

70.    Defendant knowingly and willfully subjected Plaintiffs, FLSA Collective Plaintiffs, and Class Members to time shaving of hours worked in violation of the FLSA and the State wage laws.

71.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

72.    Plaintiffs repeat each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

73.    At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

74.    At all relevant times, Defendant employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

75.    At all relevant times, Defendant had gross annual revenues in excess of $500,000.00.

76.    At all relevant times, Defendant had a policy and practice of failing to pay wages, including overtime, to Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked due to time shaving and a failure to pay blended overtime rates, in violation of the FLSA.

77.    Records, if any exist, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs are in the possession and custody of Defendant. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiffs will then seek leave of Court to amend this Complaint to set forth the precise amount due.

78.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all overtime hours, when Defendant knew or should have known such was due to Defendant's policy of time shaving.

79.    Defendant failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

80.    As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

81.     Due to the intentional, willful and unlawful acts of Defendant, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; plus an equal amount as liquidated damages.

82.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

83.     Plaintiffs repeat each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

84.     At all relevant times, Plaintiffs and Class Members were employed by Defendant within the meaning of the NYLL §§ 2, 651, and 230.

85.     At all relevant times, Defendant had a policy and practice of failing to pay Plaintiffs and Class Members all wages, including overtime, due to timeshaving, in violation of the NYLL.

86.     At all relevant times, Defendant had a policy and practice of failing to pay Plaintiffs and Prevailing Wage Subclass Members the minimum required wage pursuant to Article 9 of NYLL and overtime wages pursuant to NYLL § 232 and failure to compensate all owed benefits per NYLL § 231.

87.     Defendant willfully violated the rights of Plaintiffs' and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek due to time shaving.

88.     Defendant knowingly and willfully failed to provide accurate wage and hour notices, at the date of hiring and annually thereafter, to Plaintiffs and Class Members, as required by NYLL § 195(1).

89.    Defendant knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class Members with every wage payment, as required by NYLL § 195(3). Defendant provided fraudulent wage statements that failed to accurately reflect the proper compensation owed and hours worked by Plaintiffs and Class Members.

90.    Due to the Defendant's NYLL violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid wages, including overtime, due to time shaving; damages for unreasonably delayed payments; statutory penalties; reasonable attorneys' fees; and costs and disbursements of the action.

## COUNT III

## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS
### (brought on behalf of a Rule 23 Class)

91.    Plaintiffs reallege and incorporate all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

92.    At all relevant times, Class Members were employed by Defendant within the meaning of the applicable state wage and hour laws, just as Plaintiffs were employed by Defendant under the meaning of the FLSA.

93.    Plaintiffs can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of his overtime class claims.

94.    Defendant knowingly and willfully violated Plaintiff and Class Members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due a policy of underreporting employees' hours, in violation of the state wage and labor laws outlined above.

95.    Defendant knowingly and willfully failed to provide proper wage statements and notices to Class Members, as required under the laws of New York State, California, and Minnesota.

96.    Due to Defendant's state law violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

97.    In addition to violations of State Labor overtime laws under which Plaintiffs bring class (not individual) claims, Defendant violated State provisions requiring employers to pay employees all wages owed.   Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements.   These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any

attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

98.    The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a).   However, Plaintiffs invoke the Florida Minimum Wage Act not only in her individual capacity but to bring class claims on behalf of class members residing in Florida. Thus, Plaintiffs are not personally required to provide Defendant with a pre-suit notice as to each class

member.  As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc*., 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

99.    The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc*., 667 F.3d 273, 310 (3rd Cir. 2011).

100.    Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims.  Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014)

("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

101.    Due to Defendant's state law violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL, and state wage laws;

b.    An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.    An award of unpaid wages, including overtime, due to time shaving under the FLSA and the NYLL, and state wage laws;

d.   An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and the NYLL, and state wage laws;

e.   An award of statutory penalties as a result of Defendant's failure to comply with wage notice and wage statement requirements;

f.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g.   An award of all owed benefits owed pursuant to NYLL;

h.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

i.   Designation of this action as a class action pursuant to F.R.C.P. 23;

j.   Designation of Plaintiffs as Representatives of the Class;

k.   Designation of Plaintiff ANOOP as Representative of the Prevailing Wage Subclass; and

l.   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 24, 2024

          Respectfully submitted,

By: */s/ C.K. Lee*
          C.K. Lee, Esq.

          **LEE LITIGATION GROUP, PLLC**
          C.K. Lee (CL 4086)
          Anne Seelig (AS 3976)
          148 West 24th Street, 8th Floor
          New York, NY 10011
          Tel.: 212-465-1188
          Fax: 212-465-1181
          *Attorneys for Plaintiffs,*
          *FLSA Collective Plaintiffs,*
          *and the Class*