UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZION M. VELASQUEZ and RISHMA ANOOP, on behalf of themselves, FLSA Collective Plaintiffs, and the Class,

                    Plaintiffs,

-against-

UNIVERSAL PROTECTION SERVICE, LLC, d/b/a ALLIED UNIVERSAL,

                    Defendant.

Case No. 1:24-cv-04795 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

      Zion M. Velasquez and Rishma Anoop ("Plaintiffs") bring this putative class action against Defendant Universal Protection Service, LLC, d/b/a Allied Universal ("Allied Universal" or "Defendant"), alleging violations of the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law arts. 6, 19, as well as breach of public works contracts of which Plaintiffs allege they are third-party beneficiaries. Dkt. 38 ("Second Amended Complaint" or "SAC"). Now before the Court is Allied Universal's motion to dismiss the Second Amended Complaint's NYLL § 195 claims for deficient wage notices and wage statements for lack of standing under Federal Rule of Civil Procedure ("Rule") 12(b)(1). Dkt. 39. For the following reasons, the motion to dismiss is DENIED.

**BACKGROUND**

**I.    Factual Background**

      The following facts are taken from the Second Amended Complaint and assumed to be true for purposes of this motion. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).

1

Defendant Allied Universal operates a security and private-investigation company that provides services for both commercial and residential sites throughout New York. SAC ¶ 4. Plaintiffs and putative class members are current and former security-guard employees of Allied Universal in New York State. SAC ¶ 5. Plaintiff Anoop worked as a security guard for Allied Universal from November 2023 until January 2024, and, for periods of Anoop's employment, was employed under a public-works contract as a building-service employee pursuant to section 230 of the NYLL. SAC ¶¶ 31-32. Anoop worked five days per week for a total of eight-and-a-half hours per shift, with an automatic thirty-minute break deduction, and worked an additional half shift of four hours once per week. SAC ¶ 34. Plaintiff Velasquez worked as a security guard for Allied Universal from August 2022 until April 30, 2023, during which period Velasquez worked a sixty-hour schedule once every other week. SAC ¶¶ 36-37.

Plaintiffs allege that Allied Universal undertook a "scheme[] to underpay employees" through time-shaving practices and failing to compensate employees for time worked during meal breaks. SAC ¶ 5. Plaintiffs further allege that Allied Universal failed to pay building-service employees supplemental benefits and overtime rates as required by contracts between Allied Universal and public agencies. SAC ¶ 6. Plaintiffs also allege that Allied Universal failed to compensate employees at a blended overtime rate. SAC ¶ 7.

Moreover, as relevant here, Plaintiffs assert that Allied Universal failed to comply with the wage-notice and wage-statement requirements of NYLL section 195. SAC ¶¶ 92-93. Specifically, Plaintiffs allege that Allied Universal failed to provide a wage notice at the date of hiring and annually thereafter in violation of NYLL section 195(1). SAC ¶¶ 55, 71, 92. In addition, Plaintiffs allege that Allied Universal provided wage statements that failed to list the actual number of regular and overtime hours worked, the correct overtime rates, and accurate

2

compensation owed, in violation of NYLL section 195(3).  SAC ¶¶ 56, 60, 93.  According to Plaintiffs, Allied Universal's failure to provide wage statements and accurate wage notices "deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights."  SAC ¶ 60.[1]  Further, according to Plaintiffs, Allied Universal's alleged statutory violations "continue[] to result in delayed payment of all proper wages owed to Plaintiffs and Class Members."  SAC ¶ 61.  "This delayed payment caused Plaintiffs and Class Members to struggle to timely pay bills and delay or forgo purchases."  SAC ¶ 61.

## II. Procedural History

On June 24, 2024, Plaintiffs filed a complaint against Allied Universal alleging violations of the NYLL, the FLSA, and various other state wage and hour laws.  *See generally* Dkt. 1.  On September 9, 2024, Allied Universal filed a motion to dismiss several of the claims advanced in the Complaint, including Plaintiffs' NYLL section 195 claims.  Dkt. 15.  Plaintiffs filed the First Amended Complaint on October 2, 2024.  Dkt. 21.  In response, Allied Universal filed another motion to dismiss on October 23, 2024, again moving to dismiss, among other things, the NYLL section 195 claims for a lack of standing.  Dkt. 23 at 1.  The Court denied the motion without prejudice on October 24, 2024, pending the outcome of Court-ordered mediation.  Dkt. 25.  Following an unsuccessful mediation, Allied Universal refiled its motion to dismiss on February 21, 2025.  Dkt. 29.

The Court permitted Plaintiffs to further amend their complaint and denied the motion to dismiss the First Amended Complaint as moot.  Dkt. 37.  On March 25, 2025, Plaintiffs

---

[1] The Second Amended Complaint also references pay-frequency violations, SAC ¶ 60, but the action does not allege improper pay frequency.  Therefore, the Court does not address references to pay-frequency violations.

3

filed a Second Amended Complaint, asserting violations of the FLSA (Count I), violations of the NYLL (Count II), and breach of public-works contracts between Allied Universal and a public agency of which Plaintiffs allege they are third-party beneficiaries (Count III). SAC ¶¶ 75-99.  As relevant here, Count II asserts that, among other things, Allied Universal failed to provide Plaintiffs accurate wage and hour notices at the date of hiring and annually under NYLL section 195(1) and failed to provide accurate wage statements reflecting proper compensation owed and accurate hours worked by Plaintiffs under NYLL section 195(3). SAC ¶¶ 92-93.  Allied Universal moved to dismiss the Second Amended Complaint's NYLL sections 195(1) and 195(3) claims on April 8, 2025.  Dkt. 39; Dkt. 40 ("Br.").  Plaintiffs filed their opposition on April 22, 2025.  Dkt. 41 ("Opp.").  Allied Universal did not file a reply.

## LEGAL STANDARD

"A district court properly dismisses an action under [Rule] 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  The district court's role is to "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter*, 822 F.3d at 56 (alterations adopted) (internal quotation marks omitted).  Accordingly, the Court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must

accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

As the party asserting federal jurisdiction, plaintiffs have the burden of proof to show that they meet the Article III standing requirement. *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023) (en banc) (citing *Spokeo, Inc. v. Robins*, 578 U.S 330, 338 (2016)). The evidence required to meet the burden of proof differs based on the stage of litigation. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). At this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* (quoting *Lujan*, 504 U.S. at 561).

To meet the standing requirement, plaintiffs must show "(1) that they 'suffered an injury in fact,' (2) that the injury 'is fairly traceable' to [d]efendants' challenged conduct, and (3) that the injury 'is likely to be redressed by a favorable judicial decision.'" *Soule*, 90 F.4th at 45 (quoting *Spokeo*, 578 U.S. at 338). In *Spokeo*, the Supreme Court clarified that a statutory violation does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right," but that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. "A 'concrete' harm is something with at least a '"close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts — such as physical harm, monetary harm, or various intangible harms.'" *Lipstein v. 20X Hospitality, LLC*, No. 22-cv-04812 (JLR), 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (quoting *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021)). Further, a claim asserting an "informational injury" based on a denial of information must identify a "downstream consequence[]" or "adverse effect[]" from the injury to survive challenges on standing grounds. *TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

## DISCUSSION

Allied Universal's motion to dismiss focuses solely on Plaintiffs' NYLL claims for failure to provide wage notices at the time of hiring, N.Y. Lab. Law § 195(1), and failure to provide accurate wage statements reflecting Plaintiffs' hours worked, N.Y. Lab. Law § 195(3). Br. at 3-4. Specifically, Allied Universal argues that Plaintiffs have not adequately pleaded standing for purposes of their NYLL section 195 claims because they have not plausibly established a concrete injury in fact. *Id.* For the reasons set forth below, the Court disagrees.

### I. Plaintiffs Have Adequately Pleaded Standing

Plaintiffs allege numerous theories of downstream harm from Allied Universal's alleged NYLL section 195 violations: (1) that the New York Legislature identified a risk of harm resulting from deficient wage documentation in enacting the Wage Theft Prevention Act, N.Y. Lab. Law § 195, (2) that the violations deprived Plaintiffs of their ability to contest violations, which led to delayed payment of proper wages, and (3) that the violations decreased the amount of social security benefits available to Plaintiffs as a result of reduced wages reported on employees' W-2s. SAC ¶¶ 57, 59, 60-63. Since the Court finds that Plaintiffs have adequately alleged informational harm resulting from their inability to contest NYLL violations, the Court does not reach Plaintiffs' other two bases for standing.

Taking the facts in the Second Amended Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have sufficiently pleaded Article III standing under Second Circuit precedent. In *Guthrie v. Rainbow Fencing, Inc.*, the Second Circuit evaluated claims asserting statutory violations under NYLL section 195(3) under the standard articulated in *TransUnion*, holding that "a plaintiff cannot rely on 'technical violations' of the [NYLL]" to establish an injury in fact "but must allege 'actual injuries suffered as a result of

6

the alleged . . . wage statement violations.'" 113 F.4th 300, 305 (2d Cir. 2024) (quoting *Guthrie v. Rainbow Fencing Inc.*, No. 21-cv-05929 (KAM), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022), *aff'd*, 113 F.4th 300). A plaintiff must also demonstrate "some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308. The Second Circuit acknowledged that a plaintiff may succeed in establishing an injury by asserting that "inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion," but held that this conclusion cannot rely on "speculation and conjecture" or an assumption "without analysis." *Id.* at 309 (quoting *Quieju v. La Jugueria Inc.*, No. 23-cv-00264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)). Instead, a "plausible 'theory as to *how* [the plaintiff] was injured by the defendants' failure to provide the required documents'" is necessary to establish injury in fact. *Id.* (alteration adopted) (quoting *Quieju*, 2023 WL 3073518, at *2). At the same time, however, *Guthrie* cautioned against "impos[ing] too high a burden on plaintiffs-employees in § 195 cases." *Id.* at 309. *Guthrie* identified three examples of where district courts have found sufficient concrete injury in fact allegations from NYLL section 195 statutory violations: a plaintiff who was "prevented . . . from determining and seeking payment for the precise amount of her unpaid wages" and therefore was "deprived of her income for longer," a plaintiff who "didn't know she was supposed to be paid overtime, and so she lost out on the ability to advocate for it," and a plaintiff who was "prevented . . . from knowing whether, and to what extent, [she] had been underpaid." *Id.* at 308 n.4 (citations omitted) (collecting cases).

  Here, consistent with *Guthrie's* standards, Plaintiffs have established a "causal connection" between the NYLL statutory violations and a downstream harm, that is, lost wages. Plaintiffs allege that, by failing to provide them with wage statements reflecting accurate hours worked and wage notices stating overtime compensation policies, Allied

7

Universal "deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights." SAC ¶ 60. Plaintiffs' Second Amended Complaint goes beyond asserting a mere technical violation of the NYLL and does not rely on speculation and conjecture. Rather, Plaintiffs' Second Amended Complaint illustrates a plausible theory as to how they were injured by Allied Universal's violations: that is, Allied Universal's deficient wage documentation hindered Plaintiffs' ability to contest their compensation, which "result[ed] in delayed payment of all proper wages owed to Plaintiffs and Class Members," and caused Plaintiffs to "struggle to timely pay bills and delay or forgo purchases." SAC ¶ 61. These allegations are consistent with *Guthrie* and the authorities cited favorably therein because they give rise to a reasonable inference that Plaintiffs would have contested the violations sooner and, as a result, suffered less financial hardship, had accurate wage notices and wage statements been provided. *See Guthrie*, 113 F.4th at 305 (stating that the plaintiff must show that "he or she would have undertaken . . . advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided"). Although Plaintiffs' allegations as to an informational injury are admittedly relatively sparse, in this early procedural posture, the Court draws all reasonable inferences in favor of Plaintiffs. *See, e.g.*, *Mateer v. Peloton Interactive, Inc.*, No. 22-cv-00740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (at motion to dismiss stage, construing "all reasonable inferences" in plaintiff's favor to find standing for Wage Theft Prevention Act claim).

Cases cited favorably in *Guthrie*, as well as post-*Guthrie* cases in this district, have found this kind of concrete injury sufficient to satisfy Article III's injury-in-fact requirement. For instance, in *Kaur v. Natasha Accessories Ltd.*, No. 23-cv-06948 (JPO), 2024 WL 3429129

(S.D.N.Y. July 16, 2024), a case cited favorably by *Guthrie*, *see* 113 F.4th at 308 n.4, the plaintiff's allegations of harm closely resembled those here. The plaintiff in *Kaur* alleged that her "wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages," and that she was thus "harmed by being deprived of her income for longer than she would have been had she been able to timely raise her underpayment earlier." 2024 WL 3429129, at *4 (alterations adopted) (citation omitted). Both the plaintiff in *Kaur* and the Plaintiffs here allege that the inaccurate wage statements deprived plaintiffs of their ability to determine that they were being underpaid, which resulted in plaintiffs being deprived of their income for longer than they would have had they been provided with accurate wage statements. *Id.*; *see* SAC ¶ 61. The court in *Kaur* concluded that "[t]his financial harm is a tangible downstream consequence of the failure to receive required information." 2024 WL 3429129, at *4 (internal quotation marks omitted).

Indeed, in the wake of *Guthrie*, "courts in this Circuit 'are in agreement that a plaintiff has standing if he or she plausibly alleges that, by failing to provide the required wage statements, the employer was "able to hide its violations of wage and hour laws" and thus prevent the employee from "determining and seeking payment for the precise amount of his unpaid wages."'" *Cortez v. Brand Name 99 Cents & Up Corp.*, No. 24-cv-05262 (LJL), 2025 WL 1251297, at *6 (S.D.N.Y. Apr. 30, 2025) (alterations adopted) (quoting *Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024)); *see also Schiller-Egles v. PromptCare Cos.*, No. 23-cv-06790 (KMK), 2025 WL 904331, at *10-11 (S.D.N.Y. Mar. 25, 2025) (finding that the downstream harm of "misinform[ing] [p]laintiff about the correct number of hours she worked, and thus the wages she was entitled to receive, and allow[ing] . . . [d]efendant to continue its unlawful pay schemes," was "sufficient to establish

9

standing for purposes of a Section 195 claim" (omission in original) (alteration adopted) (citation omitted)); *Charles v. Pinnacle Too, LLC*, No. 22-cv-04232 (DEH) (JW), 2024 WL 4491560, at *16 (S.D.N.Y. Oct. 15, 2024) (finding standing where the failure to provide wage statements caused "the inability to decipher the extent of amounts owed and, thus, the inability to proceed to recover those amounts owed" and concluding that this was "exactly the type of concrete harm *Guthrie* recognized was sufficient to establish standing"); *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-cv-01231 (JLR) (SLC), 2024 WL 4751732, at *9 (S.D.N.Y. Oct. 22, 2024) (finding standing where plaintiffs alleged that defendant's wage notice violations "served to keep [them] uninformed so that [they] did not have proper information to contest the lack of proper wages" (alterations in original) (citation omitted)), *report and recommendation adopted*, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024); *Van Duser v. Tozzer Ltd.*, No. 23-cv-09329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024) (finding plaintiffs' allegation that "they weren't paid the wages they were owed and lacked information that could have helped them catch the violation" was a sufficient downstream harm for the purposes of Article III standing); *Herrera v. Comme des Garçons, Ltd.*, No. 21-cv-04929 (VEC), 2024 WL 4664820, at *3 (S.D.N.Y. Oct. 10, 2024) ("The loss of the abilities to investigate and advocate for their correct pay constitute a 'concrete downstream injury-in-fact' to Plaintiffs under *Guthrie*." (quoting *Guthrie*, 113 F.4th at 307)), *report and recommendation adopted*, 2024 WL 4467153 (S.D.N.Y. Oct. 10, 2024). The allegations of informational injury pleaded in Plaintiffs' Second Amended Complaint closely parallel those deemed sufficient in these cases.

Allied Universal nevertheless contends that the motion to dismiss should be granted because Plaintiffs' theory of harm is "conclusory, implausible, and insufficient to confer standing" under *Guthrie*. Br. at 6. Allied Universal argues that the Complaint is insufficient

10

because "Plaintiffs do not specifically allege how they were confused, misled, or prevented from contesting a violation," *id.*, but notably does not cite to any post-*Guthrie* authorities to support its position, *id.* at 6-7. Allied Universal errs in applying too high a standard for the pleading stage, where "general factual allegations of injury" are sufficient to establish standing. *Soule*, 90 F.4th at 45 (quoting *Lujan*, 504 U.S. at 561). As noted above, other courts in this District have held that this level of generality is sufficient at this stage of litigation, approving nearly identical allegations. *See Schiller-Engles*, 2025 WL 904331, at *10 (finding plaintiff's allegations that that defendant's violations "misinformed Plaintiff about the correct number of hours she worked, and thus the wages she was entitled to receive, and allowed . . . [d]efendant to continue [its] unlawful pay schemes" sufficient to establish standing at the motion to dismiss stage (omission and alteration in original) (citation omitted)); *see also Charles*, 2024 WL 4491560, at *16 (identifying "the inability to decipher the extent of amounts owed and, thus, the inability to proceed to recover those amounts owed" as concrete harm sufficient to establish standing at the motion to dismiss stage). More specific allegations are not necessary to survive a motion to dismiss.

     Allied Universal contends that the inaccurate wage statements did not "obscure" the fact that Plaintiffs were being underpaid. Br. at 7. The Court is unpersuaded. Taking Plaintiffs' allegation that the lack of wage notices negatively impacted their ability to contest the wage violations as true and accepting all reasonable inferences in favor of Plaintiffs, the allegation of concrete harm is plausible. For example, had Plaintiffs been provided proper wage notices containing the accurate number of hours worked and the correct overtime rate, it is plausible that they would have been alerted of the underpayment sooner and would have been better positioned to contest the wage violations.

For the foregoing reasons, the Court finds that Plaintiffs have adequately alleged a concrete injury resulting from Defendant's deficient wage notices and statements, and have therefore adequately pleaded Article III standing for purposes of their NYLL section 195 claims.

## CONCLUSION

For the reasons stated herein, Allied Universal's motion to dismiss Plaintiffs' NYLL section 195 claims is DENIED. The Clerk of Court is respectfully requested to terminate the motions at Dkts. 29 and 39.

Dated: July 28, 2025
New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge